ROBERT J. RANDALL & another[1] vs. MARION HADDAD
& others.[2]

Suffolk. February 3, 2014. - June 12, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Judgment*, Satisfaction. *State Board of Retirement. Attorney General. Govern-
mental Immunity. Retirement. Public Employment*, Retirement. *Com-
monwealth*, Trustee process. *Trustee Process. Practice, Civil*, Judgment, At-
tachment, Trustee process.

In a civil action to satisfy a judgment, the amount of which represented the
proceeds from the sale of property, and part of which the individual defendant
wrongfully deposited (despite a court order that the proceeds be held in
escrow) in her retirement account with the State Board of Retirement
(board), the judge erred in granting a motion to dismiss brought by the
board and the Attorney General (both of whom had been named as defend-
ants), where G. L. c. 32, § 19, did not bar attachment of the funds that
wrongfully had been deposited, in that the individual defendant did not
have "rights" to those funds within the meaning of the statute [351-353];
and where, although the bases advanced by the plaintiffs for finding waiver
of sovereign immunity were not applicable, in the exceptional circumstances
of the case, the doctrine of sovereign immunity was not available to the
Commonwealth to prevent the plaintiffs from seeking to have the board
serve as a trustee with respect to those funds [353-359].

CIVIL ACTION commenced in the Superior Court Department on
November 19, 2008.

A motion to dismiss was heard by *Regina L. Quinlan*, J., and
entry of corrected judgment on the motion to dismiss was ordered
by *Thomas E. Connolly*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Michael J. Walsh* for the plaintiffs.

*Daniel G. Cromack*, Assistant Attorney General, for Attorney
General & another.

---

[1]Saint Nectarios Monastery.

[2]The Holy Annunciation Monastery Church of the Golden Hills; Attorney
General; State Board of Retirement; and Richard Campana.

*Gerald W. Mead, Jr.*, for Marion Haddad, was present but did not argue.

BOTSFORD, J. In this case, the plaintiffs, a monk of the Greek Orthodox church and the monastery where he is currently a resident, seek to satisfy a judgment they obtained in a separate action in the Superior Court in Middlesex County against the defendants Marion Haddad and The Holy Annunciation Monastery Church of the Golden Hills (Holy Annunciation). The amount of the judgment represents the proceeds from the sale of property in Melrose on which stands a monastery and a church, title to which at the time of sale stood in the name of Holy Annunciation. Despite a court order requiring Haddad and Holy Annunciation to hold the proceeds from the sale of this property in escrow, Haddad deposited $40,000 of those proceeds in her retirement account with the State Board of Retirement (board). Having received no payment on the judgment in that action, the plaintiffs brought this case in part to name the board as trustee for the $40,000 Haddad had deposited with it. The board and the Attorney General, both named as defendants, moved to dismiss on grounds that Haddad's funds held by the board were not subject to attachment and, in any event, principles of sovereign immunity barred the suit against the board. A Superior Court judge (motion judge) agreed and allowed the motion to dismiss. On the plaintiffs' appeal, a panel of the Appeals Court also agreed with the Commonwealth in an unpublished memorandum and order pursuant to Appeals Court rule 1:28. See *Randall* v. *Haddad*, 82 Mass. App. Ct. 1119 (2012). We granted the plaintiffs' application for further appellate review, and we reverse the Superior Court order dismissing the board and the Attorney General.[3]

1. *Background.* We summarize the facts as set forth in the plaintiffs' complaint, accepting them as true.[4] See *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court*, 448 Mass.

---

[3]The plaintiffs contend that the Attorney General is a necessary party to this action because "the allegations . . . involve misuse of the funds of a Massachusetts charitable corporation." Because the Attorney General has not contested the plaintiffs' characterization of her as a necessary party, we accept the proposition for purposes of this opinion.

[4]The complaint in the case before us (sometimes referred to in this opinion as the Suffolk action) mentions the underlying case brought in 2004 in Superior

15, 20-21 (2006). The plaintiff Robert J. Randall is an Orthodox monk of and resides at the plaintiff Saint Nectarios Monastery, an association of Orthodox monks of the Greek Orthodox Missionary Diocese of America. Holy Annunciation is a charitable corporation organized under G. L. c. 180 in 1983; at all times relevant to this case, Haddad has been its sole officer and director. On April 16, 2004, the plaintiffs filed an action against Haddad and Holy Annunciation in the Superior Court in Middlesex County (Middlesex action; see note 4, *supra*) to determine (among other claims) the proper disposition of the proceeds of what was alleged to be an impending sale of the monastery and church building located on real property in Melrose, title to which stood in the name of Holy Annunciation.[5] The monastery and church building were sold on February 3, 2006, to Haddad's sister, and Holy Annunciation received $105,700.17 in net proceeds. This sum was deposited in Holy Annunciation's corporate account at Sovereign Bank.[6]

On March 2, 2006, at the conclusion of a hearing in the

Court in Middlesex County, captioned Father Joseph Randall *vs.* Haddad, MICV2004-1638 (Middlesex action), but does not describe its allegations in any detail. We have reviewed the complaint in the Middlesex action, see *Jarosz* v. *Palmer*, 436 Mass. 526, 530 (2002), and include some of its allegations here to explain more of the background of this case. A default judgment against Marion Haddad and The Holy Annunciation Monastery Church of the Golden Hills (Holy Annunciation) entered in the Middlesex action, and for background purposes here, we accept the facts alleged as true. See, e.g., *Nancy P.* v. *D'Amato*, 401 Mass. 516, 519 (1988) (where defendant in civil action defaults, "well-pleaded facts are deemed to be admitted"); *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. 826, 834-835 (1978).

[5]The complaint in the Middlesex action further alleges the following. For many years up to 2002, Father Robert J. Randall had lived as a monk at the Holy Annunciation monastery and had been a director and then president of Holy Annunciation, while Haddad was the corporation's clerk. After the long-serving abbot of the monastery died in February, 2002, Haddad secretly engineered a change in Holy Annunciation's officers and directors, and became herself the sole director and officer of the corporation. She then arranged, again secretly, for the sale of the monastery and church building in Melrose to her sister.

[6]Exhibit D to the plaintiffs' complaint in this action is a copy of the statement for Holy Annunciation's account at Sovereign Bank for the period from February 21 to March 19, 2006. It shows that the proceeds from the sale of the monastery property were deposited in the account on February 27, and that immediately before the deposit was made, the balance in the account was $33.52.

Middlesex action at which Haddad was present, a Superior Court judge ordered the defendants to hold the proceeds of the Melrose property's sale in escrow.[7] Nevertheless, that same day, Haddad withdrew $98,771 from Holy Annunciation's corporate account, leaving a balance of $6,755.69. Using the money withdrawn, again on the same day, Haddad caused to be issued multiple bank checks to Richard Campana totaling $30,901, and on the next day, March 3, obtained a bank check in the amount of $40,000 and deposited the funds with the board in her State employees' retirement system account.[8] The parties agree that the $40,000 deposited in Haddad's State retirement account was used to "buy back" creditable years of employment for purposes of calculating her retirement benefits upon retirement.[9,10]

On March 21, 2008, default judgment entered for the plaintiffs in the Middlesex action due to Haddad's and Holy Annunciation's failure to provide discovery. Thereafter, a Superior Court judge held an evidentiary hearing on damages, and on August 6, judgment entered in the amount of $105,000 in favor of the plaintiffs. On October 21, 2008, execution issued in the amount of $163,506.62 — an amount that included interest and costs — against both Haddad and Holy Annunciation. To date, the plaintiffs have not recovered anything on the judgment against either defendant.

In November of 2008, the plaintiffs learned that Haddad had

[7]The order stated in relevant part: "[A]ll proceeds from the sale of the Monastery building at 211 Bay State Road in Melrose Mass[.], under the direct or indirect custody or control of the defendants or their agents, shall be held in escrow by [the] defendants, pending a hearing and further order of the Court."

[8]The record does not indicate what position or job Haddad holds or held as a State employee, but there appears to be no dispute that she is or was a State employee.

[9]The addition of the $40,000 to Haddad's retirement account increased the funds in it from $9,396.28 (including earned interest) to $49,396.28.

[10]At the hearing in the Superior Court on the motion to dismiss in this case, the transcript of which is included in the record before us, counsel for the plaintiffs stated that the plaintiffs did not know that Haddad had taken the $40,000 from Holy Annunciation's bank account and deposited it with the State Board of Retirement (board) until the default judgment had entered in the Middlesex action because of Haddad's failure to respond to discovery before judgment.

filed a request with the board to remove the $40,000 she had deposited in her retirement account. The plaintiffs then filed this case in the Superior Court in Suffolk County (Suffolk action) seeking (1) a declaration that under G. L. c. 109A, the transfers through bank checks to Campana and the board were fraudulent and therefore null and void, and an order that the funds be paid to the plaintiffs in partial satisfaction of their judgment against Haddad and Holy Annunciation; (2) an injunction prohibiting the release of the $40,000 from Haddad's retirement account until the issues concerning the proper disposition of the proceeds were resolved; and (3) issuance of a trustee process summons to the board in relation to the $40,000 in Haddad's retirement account.

The board and the Attorney General (collectively, the Commonwealth) moved to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), contending that Haddad's retirement account was exempt from attachment pursuant to G. L. c. 32, § 19, and that the Commonwealth had not waived its sovereign immunity to be sued as a trustee.[11] After a hearing, the motion judge agreed, and dismissed the plaintiffs' complaint against the Commonwealth.[12] As indicated previously, the plaintiffs appealed, a panel of the Appeals Court affirmed the order of dismissal,[13] and this court granted the plaintiffs' application for further appellate review.

2. *Discussion.* We consider the two grounds advanced by the Commonwealth and accepted by the motion judge for dismissing the plaintiffs' complaint.

a. *G. L. c. 32, § 19.* The Commonwealth contends that Had-

---

[11]At around the time the plaintiffs filed this case, a judge in the Superior Court granted the plaintiffs' ex parte motion for trustee process to attach the $40,000 in Haddad's State retirement account.

[12]While the plaintiffs' appeal of the order allowing the Commonwealth's motion to dismiss was pending, they settled with Campana. The plaintiffs thereafter moved for summary judgment on their claims against Haddad. The motion was allowed by a judge in the Superior Court. It does not appear from the record that final judgment has entered in the case.

[13]Like the judge in the Suffolk action, a panel of the Appeals Court concluded that the Commonwealth had not waived its sovereign immunity from trustee process and that State retirement funds were not subject to attachment by trustee process pursuant to G. L. c. 32, § 19. See *Randall* v. *Haddad*, 82 Mass. App. Ct. 1119 (2012).

dad's retirement account cannot be attached because a public employee's retirement account is exempt from attachment (and from being taken on execution) pursuant to G. L. c. 32, § 19 (§ 19). Although the plaintiffs acknowledge that the language of § 19 so states, they urge the court to create an equitable exception to § 19's exemption. In *Utley v. Utley,* 355 Mass. 469, 471 (1969), this court suggested that the judicial creation of an equitable exception to § 19 was not possible. We find it unnecessary to consider the applicability of *Utley* to this case, however, because we conclude that the $40,000 deposited by Haddad into her retirement account does not fit within § 19's prohibition against attachment.

Section 19 provides in pertinent part:

> "The rights of a member to an annuity, pension or retirement allowance, such annuity, pension or retirement allowance itself, and *all his rights in the funds* of any system established under the provisions of such sections, shall be exempt from taxation . . . and from the operation of any law relating to bankruptcy or insolvency and *shall not be attached or taken upon execution or other process"* (emphasis added).[14]

As the quoted language indicates, the bar against attachment applies to a member's "rights" in the funds of a particular retirement system. By definition, for a member to have "rights" in the funds, the member must have a rightful claim to or ownership interest in those funds. See Black's Law Dictionary 1436 (9th ed. 2009) (defining "right" as "[t]he interest, claim, or ownership that one has in tangible or intangible property"). Accord Webster's Third New International Dictionary 1955 (1993) ("right" means "having proper title or right" or "something to which one has a just claim"). Here, however, Haddad, apparently a member of the State employees' retirement system, see G. L. c. 32, § 1, lacked an ownership interest in the $40,000

---

[14]The sentence from G. L. c. 32, § 19, quoted in the text is from the first paragraph of the section. In its second paragraph, the Legislature has set out certain exceptions to the prohibition against attachment and taking on execution, none of which applies in this case. We return to the second paragraph of § 19, see text accompanying note 23, *infra.*

she deposited with the board, or any rightful claim to these funds. Rather, the funds, part of the proceeds from the sale of Holy Annunciation's monastery and church property in Melrose,[15] were solely the property of Holy Annunciation, a charitable corporation, on deposit in Holy Annunciation's own bank account,[16] and nothing in the record suggests that Haddad had any right to take and use these funds for her own purposes — namely, to increase her retirement benefits from the Commonwealth. In the circumstances, because the $40,000 at issue constituted funds of a separate corporate entity that Haddad misappropriated to herself in violation of her legal and fiduciary obligations as an officer and director of Holy Annunciation as well as an order of the Superior Court, Haddad did not, and does not, have "rights" to the $40,000 at issue within the meaning of § 19. Accordingly, § 19's bar against attachment of a retirement board member's "rights" in the funds does not apply in this case.[17]

b. *Sovereign immunity.* The Commonwealth argues that even if the $40,000 Haddad deposited in her retirement account is subject to attachment under § 19, principles of sovereign im-

---

[15]The plaintiffs' complaint so alleges, and we have accepted the allegation as true for purposes of this appeal, but the facts in the record, including the Holy Annunciation's bank statement, also provide support for the allegation. The Commonwealth makes no suggestion that the $40,000 came from any other source.

[16]The clear inference we draw from the record is that Haddad's ability to cause the bank to issue a bank check on the funds in Holy Annunciation's account was due to her position as the sole officer and director of the charitable organization.

[17]We emphasize the narrow scope of our conclusion. Section 19 protects from attachment (or being taken on execution) an annuity, pension, or retirement allowance to which a member of a retirement system governed by G. L. c. 32 may be entitled, as well as the member's rights in the funds of that system. We are not concerned here with a member's annuity, pension, or retirement allowance. Rather, we deal with a discrete sum of money deposited by a member into the retirement system, a sum (1) that is traceable and identifiable, (2) in which the absence of any rights on the part of the member is exceptionally clear, and (3) that was ordered by a court to be held in escrow. We certainly do not suggest here that whenever there is a claim that a member of a retirement system owes a debt to a third party that remains unsatisfied, the claimant may seek to attach or reach the member's rights to receive a pension or retirement allowance, or even funds the member herself has deposited into the system.

munity still bar the plaintiffs from bringing a trustee process claim against the board.

The general rule of sovereign immunity provides that "[t]he Commonwealth 'cannot be impleaded into its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed . . . [by] statute.' " *Woodbridge* v. *Worcester State Hosp.*, 384 Mass. 38, 42 (1981), quoting *Broadhurst* v. *Director of the Div. of Employment Sec.*, 373 Mass. 720, 722 (1977). With respect to the remedy of trustee process,[18] as the Commonwealth notes, this court has held that "the Commonwealth cannot be summoned as a trustee under trustee process without statutory authorization and, therefore, there can be no attachment by trustee process" absent such an authorization. *MacQuarrie* v. *Balch*, 362 Mass. 151, 152 (1972). See *Massachusetts Elec. Co.* v. *Athol One, Inc.*, 391 Mass. 685, 688 (1984) (*Athol One, Inc.*).

The plaintiffs respond to the Commonwealth's argument that sovereign immunity is not applicable to this case because (1) Haddad's deposit constitutes a fraudulent transfer and the Commonwealth has waived sovereign immunity in adopting the Uniform Fraudulent Transfer Act (UFTA), G. L. c. 109A; (2) § 12 of G. L. c. 258, the Massachusetts Tort Claims Act, generally waives the Commonwealth's sovereign immunity; and (3) in any event, art. 5 of the Massachusetts Declaration of Rights has abrogated sovereign immunity. We conclude that although the bases advanced by the plaintiffs for finding waiver of sovereign immunity are not applicable, in the exceptional circumstances of this case, the doctrine of sovereign immunity

---

[18]Under G. L. c. 246, a plaintiff bringing an action to recover a money judgment may name a "person" holding property in which the defendant has rights as a "trustee" to hold that property as security for the anticipated judgment. See G. L. c. 246, § 20. See also Mass. R. Civ. P. 4.2, 365 Mass. 740 (1974) (outlining availability of and procedures for trustee process actions). But under G. L. c. 4, § 7, Twenty-third, and general principles of statutory interpretation, when the word "person" is used in a statute, it generally does not include the Commonwealth unless the statute specifically so indicates. See, e.g., *Perez* v. *Boston Hous. Auth.*, 368 Mass. 333, 339 (1975), quoting *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962) ("[i]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof").

should not be interposed to prevent the plaintiffs from seeking to have the board serve as a trustee.[19]

With respect to the UFTA, our conclusion that Haddad had no rights in the $40,000 she deposited in her State retirement account on March 3, 2006, dispenses with the plaintiffs' argument under that statute. The UFTA includes "government or governmental subdivision or agency" in its definition of "[p]erson." G. L. c. 109A, § 2. As such, the Commonwealth may be a transferee under the statute. See *id.* Although the inclusion of the Commonwealth as a "person" within the meaning of the UFTA strongly suggests that the Commonwealth has waived its sovereign immunity from trustee process for the purposes of the UFTA, see G. L. c. 109A, §§ 2, 8 (*a*) (2), this suggestion does not help the plaintiffs. Under the UFTA, "a transfer is not made until the debtor *has acquired rights in the asset transferred*" (emphasis added). G. L. c. 109A, § 7 (4). Thus, in order for Haddad's transfer of the $40,000 to the board to fall within the purview of the UFTA, she must have acquired rights in those funds.[20] Because Haddad had no rights in the funds, the UFTA does not apply.

The plaintiffs' reliance on the Tort Claims Act falls short for a similar reason, namely, the statutory language does not reach the plaintiffs' case. The plaintiffs contend that the Legislature abrogated sovereign immunity when it enacted the Tort Claims Act, and they cite G. L. c. 258, § 12, for the point. Section 12 provides that "[c]laims against the commonwealth, except as otherwise expressly provided in [G. L. c. 258] or by any general or special provision of law, may be enforced in the superior court." The plaintiffs argue that because § 12 allows parties to enforce their claims against the Commonwealth and does not include any limitations on doing so, the section operates as a general waiver of sovereign immunity.

[19]We briefly discuss hereafter the plaintiff's argument that art. 5 of the Massachusetts Declaration of Rights eliminated the doctrine of sovereign immunity. See note 21, *infra.*

[20]See, e.g., *In re Leneve*, 341 B.R. 53, 56 (Bankr. S.D. Fla. 2006) (to prove fraudulent transfer under § 548 of Federal Bankruptcy Code or Florida fraudulent transfer act, plaintiff must show, among other things, that "the property transferred belonged to the debtor"). See also *In re Spatz*, 222 B.R. 157, 164 (N.D. Ill. 1998) (noting that provisions of UFTA parallel § 548 of Federal Bankruptcy Code).

We previously have rejected this argument. See *Athol One, Inc.*, 391 Mass. at 687-689. In that case, the plaintiff electric utility company named the Commonwealth as a defendant in an effort to reach and apply funds owed by the Department of Public Welfare to Athol One, Inc., the owner of a nursing home that in turn owed money to the plaintiff for electricity service. *Id.* at 686. We noted there that "[t]he common law sovereign immunity waiver granted by § 12 and its predecessors has been interpreted primarily as applicable in actions of contract against the Commonwealth." *Id.* at 687. We concluded that the electric company's suit against the Commonwealth could not be maintained because it did not "derive from" the contractual relationship between the Commonwealth and the nursing home. *Id.* at 689. The same is true in the present case: because the plaintiffs' action here "does not derive from the legal consequences of the contractual relationship" between Haddad and the Commonwealth, *id.*, the Commonwealth has not waived sovereign immunity under § 12.[21]

That said, this court has long recognized that "sovereign immunity is a judicially created common law concept," *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 615 (1973), and, as such, is subject to judicial abrogation or limitation. See *Whitney* v. *Worcester*, 373 Mass. 208, 212 (1977); *Morash & Sons*, *supra* at 619. See also *Hannigan* v. *New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.*, 367 Mass. 658, 659 (1975). In the particular circumstances presented here, the doctrine of

---

[21]The plaintiffs also contend that the doctrine of sovereign immunity violates art. 5 of the Massachusetts Declaration of Rights. Article 5 provides: "All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them." The plaintiffs focus on the phrase, "and are at all times accountable to them," and argue that the people of the Commonwealth eliminated sovereign immunity when they ratified the Declaration of Rights.

The plaintiffs have not cited any case to support their contention that the phrase, "and are at all times accountable to them," in art. 5 is synonymous with "can always be brought into court to be held liable." This does not appear to have been the aim of art. 5. See *Opinion of the Justices*, 160 Mass. 586, 588-589 (1894) (brief discussion of art. 5 and other constitutional provisions). However, in this case we do not need to consider further the meaning of the phrase in art. 5 on which the plaintiffs rely because we conclude that on the particular facts presented here, sovereign immunity should not apply.

sovereign immunity should not be available to the Commonwealth to prevent the plaintiffs from pursuing their request for trustee process.

Haddad, at every step, has prevented the plaintiffs from obtaining the relief that court orders and judgments have entitled them to receive. She defied the Superior Court judge's order requiring that she hold the proceeds from the sale of the monastery and church property in escrow by withdrawing almost the full amount from Holy Annunciation's bank account the same day. Thereafter, she took $40,000 of those funds, which constituted charitable organization funds, and misappropriated them for her own personal use by depositing them into her personal State retirement account. In doing so, she sought to deposit them where the plaintiffs could not reach them. Not only did Haddad misappropriate funds from a charitable organization and try to insulate herself from collection of a judgment, the $40,000 deposit will now become a basis for increasing the amount of her retirement benefits. See G. L. c. 32, § 5 (2) (calculation of retirement allowance). See also D.A. Randall & D.E. Franklin, Municipal Law and Practice § 13.4, at 651 (5th ed. 2006) ("The amount of superannuation allowance paid to a retired member depends upon a number of factors, including . . . his creditable membership service . . ."). The increase in benefits becomes a burden that the Commonwealth and its taxpayers will be required to bear for as long as Haddad remains entitled to receive a retirement allowance. Haddad should not be permitted to profit from her misconduct in this way.

We recognize that since the enactment of the Tort Claims Act, at least where a party seeks to hold the Commonwealth liable directly for funds, the court has stated that "immunity is still in effect unless consent to suit has been 'expressed by the terms of a statute, or appears by necessary implication from them.' " *Bain* v. *Springfield*, 424 Mass. 758, 763 (1997), quoting *C & M Constr. Co.* v. *Commonwealth*, 396 Mass. 390, 392 (1985). Here, however, the plaintiffs do not bring any claim against the Commonwealth directly, and the perfect storm of Haddad's contumacious conduct and perversion of the Commonwealth's public employee retirement law leads us to conclude

that the defense of sovereign immunity against serving as a trustee should be unavailable to the Commonwealth.[22]

It bears noting that with respect to § 19, the Legislature appears to have recognized implicitly that in certain situations, the board may be summoned as a trustee in connection with a member's retirement account, including specifically the member's annuity pension or retirement allowance itself. See G. L. c. 32, § 19, second par.[23] Determining that, in the highly unusual circumstances presented here, the board is not protected by sovereign immunity from serving in the same trustee role is therefore not inconsistent with § 19 and more generally does no injury to the legitimate purposes that the concept of sovereign immunity is designed to serve. As this court observed in another context:

> "[T]his is not a case where sovereign immunity is appropriately invoked in order to protect the discretionary functions of a public official, see *Whitney* v. *Worcester*, 373 Mass. 208, 219 (1977), or to prevent the unauthorized actions of a public official, see *George A. Fuller Co.* v. *Commonwealth*, 303 Mass. 216 (1939), or to shield the public fisc from the specter of virtually unlimited liability. See *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 623 n.6 (1973). Nor is this a case where judicial action on sovereign immunity is appropriately deferred to provide an inducement to the Legislature to abrogate the immunity on its own. See, e.g., *Hannigan* v. *New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.*, 367 Mass. 658 (1975); *Morash & Sons* v. *Commonwealth, supra.* Here, no reasons

---

[22]Cf. *Sommer* v. *Maharaj*, 451 Mass. 615, 616, 622 (2008), cert. denied, 556 U.S. 1235 (2009) (defendant not permitted to pursue claim that individual retirement account assets were protected by statute from claim of creditor where she helped husband, against whom judgment had entered in previous proceeding, to circumvent court orders and avoid paying judgment for many years).

[23]The second paragraph of G. L. c. 32, § 19, provides in part:

> "Nothing in this section shall prevent a member's annuity pension, retirement allowance or return of accumulated total deductions from being attached, taken on execution, assigned, or subject to other process to satisfy a support order under [G. L. c. 208 and other specified statutes] . . . or an assignment of marital property under [G. L. c. 208]."

of 'justice and public policy' argue for the application of sovereign immunity. *Id.* at 623.''

*Bates* v. *Director of the Office of Campaign & Political Fin.*, 436 Mass. 144, 174 (2002). We conclude that on the facts of this case — that is, where a member of a public employee retirement system misappropriates funds from a charitable corporation and, in violation of a court order, deposits those funds in her personal retirement account to increase her own retirement benefits at the Commonwealth's expense — the doctrine of sovereign immunity should not be applied to bar the plaintiffs from seeking to hold the board as a trustee of the wrongfully deposited funds.

3. *Conclusion.* Haddad does not have rights in the $40,000 she deposited with the board on March 3, 2006, and therefore, G. L. c. 32, § 19, does not prohibit those funds from being subject to attachment or to be taken on execution or other process. In addition, in the very particular circumstances of this case, the doctrine of sovereign immunity does not bar the plaintiffs from summoning the State Board of Retirement as a trustee with respect to those funds. We reverse the order allowing the motion to dismiss, and remand the case to the Superior Court for further proceedings consistent with this opinion.[24]

*So ordered.*

---

[24]Execution issued against Haddad and Holy Annunciation in the underlying Middlesex action on October 21, 2008. On or about August 24, 2010, Haddad filed a voluntary petition for bankruptcy under Chapter 7 of the Federal Bankruptcy Code. See *In re Haddad*, 464 B.R. 501, 503 (Bankr. D. Mass. 2011). She received a discharge pursuant to 11 U.S.C. § 727(a) (2006) on December 1, 2010. *In re Haddad*, *supra* at 504. No party has argued the effect, if any, of these concluded bankruptcy proceedings on the plaintiffs' efforts to collect on the judgment against Haddad in the Middlesex action, and we do not address the question.