NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1106                                     Appeals Court

SENECA ONE, LLC  vs.  PAUL GEULAKOS & another.[1]

No. 14-P-1106.

Hampden.     June 3, 2015. - October 1, 2015.

Present:  Meade, Hanlon, & Blake, JJ.

Lottery.  State Lottery Commission.  Commonwealth, Trustee
     process.  Practice, Civil, Trustee process.  Governmental
     Immunity.  Immunity from suit.  Assignment.

Civil action commenced in the Superior Court Department on September 27, 2013.

A motion for approval of trustee process attachment was heard by Edward J. McDonough, Jr., J., and a motion for reconsideration was considered by him.

Andrew Martin Batchelor, Assistant Attorney General, for State Lottery Commission.
David A. Lavenburg for the plaintiff.

HANLON, J.  The State Lottery Commission (commission)

appeals from an order approving an attachment by trustee process

of lottery prize proceeds due Paul Geulakos.  The commission

_____

[1] State Lottery Commission, trustee.

argues that an action such as this is barred by G. L. c. 10, § 28(4), which prohibits the assignment of lottery prizes, except under certain very limited circumstances and, also, that the doctrine of sovereign immunity bars trustee process against the Commonwealth. The commission asks that we reverse the order. The plaintiff, Seneca One, LLC (Seneca), responds that this action is permitted under G. L. c. 10, § 28(2), which Seneca maintains effectively waives sovereign immunity in a case such as this. We disagree, and reverse the order.

Background. Seneca is a limited liability company organized in Maryland and registered with the commission to transact business in Massachusetts. It "is engaged in, among other things, the business of purchasing assignments of lottery prize payments in exchange for a discounted lump-sum payment." On April 1, 2009, Geulakos won a $1 million lottery prize, payable in twenty $50,000 annual installments. In August, 2011, he executed a demand promissory note to Seneca in the principal amount of $40,000 (note), as part of a "Lottery Prize Assignment Agreement" (agreement) between Seneca and Geulakos, ostensibly pursuant to G. L. c. 10, § 28(4).[2] Under the terms of the

[2] "Payment of any prize drawn may be made to a person under a voluntary assignment of the right to receive future prize payments, in whole or in part, if the assignment is made to a person or entity named as the assignee in an appropriate judicial order of a court of competent jurisdiction, which shall be the superior court sitting within and for the county in which

agreement, Seneca would pay Geulakos a lump sum of $154,722.81

in exchange for the assignment of ten lottery payments, each in

the amount of $20,202.21, and seven lottery payments in the

amount of $50,000 each over a period of years, beginning in 2012

and ending in 2028, when the prize money ran out.

In January, 2012, Seneca filed a "Petition for Court Order

Approving Voluntary Assignment of Lottery Prize Payments" in

Superior Court in Norfolk County seeking approval of that

assignment as required by the statute.[3]  The petition did not

the commission is situated or in which the assignor resides.
Under this paragraph, a court may issue an order approving a
voluntary assignment and directing the commission to make prize
payments in whole or in part to the designated assignee, if the
court finds that all of the following conditions have been met
. . ." (emphasis supplied).  G. L. c. 10, § 28(4), as amended
through St. 2004, c. 149, § 23.  Specifically, the judge must
find, inter alia, that the assignor "(i) is of sound mind and
not acting under duress, (ii) has been advised . . . by his
independent legal counsel and independent certified financial
planner . . . [and] 'independent' shall mean unrelated to,
unassociated with, and not compensated by the assignee or the
assignee's affiliates; (iii) irrevocably agrees that he is
subject to state income tax with respect to a gain or income
which the assignor will recognize . . . ; and (iv) understands
and agrees that with regard to the assigned payments, the
commonwealth, the commission, and the director shall have no
further liability or responsibility to make said payments to the
assignor."  G. L. c. 10, § 28(4)(B).  Subsection (4)(B)(v) also
requires "the personal appearance and in-court affirmation of
the assignor" "absent a showing of special circumstances or
hardship."  Other provisions establish requirements for
registering a business seeking approval for the assignment, as
well as for the payment of delinquent child support and taxes on
the prize money.  See G. L. c. 10, § 28.

[3] In a previous Norfolk County action, Seneca had obtained
an order in April, 2010, assigning twelve of Geulakos's lottery

reveal that Seneca already had advanced Geulakos $40,000 under the note.[4]  In May, 2012, the petition was dismissed by stipulation of the parties, with prejudice and without an order approving the assignment.  Seneca then filed a separate action in October, 2012, in Superior Court in Middlesex County, seeking to enforce the note.  In July, 2013, in the Middlesex County case, Seneca obtained summary judgment against Geulakos for approximately $49,000 (including costs and attorney's fees).[5]

In September, 2013, Seneca filed this action against Geulakos and the commission in Superior Court in Hampden County. The complaint referenced the judgment obtained in Superior Court in Middlesex County, but, in its request for relief, sought a new judgment against Geulakos for $49,132, and an order of trustee process against the commission.  Seneca served the commission with a trustee summons seeking to attach the annual payments due Geulakos until the debt (including interest and costs) was satisfied.  The commission filed an opposition to the

prize payments, each in the amount of approximately $30,000. Seneca than filed a subsequent Norfolk County action in November, 2010, seeking another order of assignment.  However, shortly after that order was issued, it was vacated with prejudice.  Neither of these actions is part of the instant appeal.

[4] It is not clear as to when Geulakos would have to reimburse the money advanced.  Nothing in the case before us ultimately turns on that question.

[5] In December, 2013, Seneca secured an execution on the judgment against Geulakos for approximately $56,000.

motion for approval of the trustee process attachment claiming, inter alia, sovereign immunity. By a decision dated December 24, 2013, after a hearing, the judge allowed Seneca's motion for an order of attachment by trustee process against the commission. The commission timely appealed. The commission's motion for reconsideration was denied, and the commission again filed a timely notice of appeal.

Discussion. "The right of any person to a [lottery] prize drawn is not assignable except under . . . limited circumstances." G. L. c. 10, § 28, as amended through St. 2004, c. 149, § 23.[6] Section 28(4) describes the circumstances under which "[p]ayment of any prize drawn may be made to a person under a voluntary assignment of the right to receive future prize payments." A significant number of conditions are specified, and the judge "may issue an order approving a voluntary assignment and directing the commission to make prize payments in whole or in part to the designated assignee, if the court finds that all of [those] conditions have been met" (emphasis supplied). Ibid. This subsection serves to safeguard the rights of the lottery winner and to assure, as far as

---

[6] Section 28 was rewritten by the Legislature in 2004 to permit assignments of future lottery payments, subject to court review and approval. See St. 2004, c. 149, § 23. Prior to that amendment, such assignments were illegal in Massachusetts. See Singer Friedlander Corp. v. State Lottery Commn., 423 Mass. 562, 565-567 (1996).

possible, that no unfair advantage is taken by predatory lenders or others.

The parties agree that Seneca failed to secure a valid assignment under G. L. c. 10, § 28(4), because the proposed assignment was never approved by the court. However, G. L. c. 10, § 28(2), provides that "[p]ayment of any prize drawn may be made to any person under an appropriate judicial order." It was under this provision that the motion judge issued the order for trustee process in this case, adopting Seneca's reasoning that Seneca was not seeking to enforce an assignment, but rather to collect on a judgment in connection with an underlying $40,000 debt arising out of an unpaid promissory note.

It has long been the rule that trustee process actions against the Commonwealth are barred by sovereign immunity. See William J. McCarthy Co. v. Rendle, 222 Mass. 405, 406 (1916); MacQuarrie v. Balch, 362 Mass. 151, 152 (1972); Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 688 (1984). See also Randall v. Haddad, 468 Mass. 347, 354 (2014) ("The general rule of sovereign immunity provides that '[t]he Commonwealth "cannot be impleaded into its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed . . . [by] statute."' Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 [1981], quoting Broadhurst v. Director of the Div. of

Employment Sec., 373 Mass. 720, 722 [1977].  With respect to the
remedy of trustee process, . . . [the] court has held that 'the
Commonwealth cannot be summoned as a trustee under trustee
process without statutory authorization and, therefore, there
can be no attachment by trustee process' absent such an
authorization.  MacQuarrie v. Balch, [supra]").  Nothing in
either G. L. c. 10, § 28, or G. L. c. 246 (governing trustee
process), explicitly states that the Commonwealth has waived its
immunity as to trustee process actions.  See Midland States Life
Ins. Co. v. Cardillo, 59 Mass. App. Ct. 531, 536 (2003)
(Midland) (rules of construction for statutory waivers of
sovereign immunity are "stringent").

The question here is whether G. L. c. 10, § 28(2),
necessarily implies a waiver of sovereign immunity in a
situation such as this.  We are not persuaded that it does.  The
court in Singer Friedlander Corp. v. State Lottery Commn., 423
Mass. 562, 565 (1996) (Singer Friedlander), addressed the same
language in an earlier version of the statute[7] and concluded that

---

[7] At the time that Singer Friedlander, supra, was decided,
G. L. c. 10, § 28, as amended by St. 2001, c. 26, § 1, read in
its entirety, "No right of any person to a prize shall be
assignable, except that payment of any prize may be made to the
estate of a deceased prize winner or to the [child support
enforcement] agency as set forth in chapter one hundred and
nineteen A, and except that any person pursuant to an
appropriate judicial order may be paid the prize to which the
winner is entitled, and except that the commission may, by
regulations adopted pursuant to section twenty-four, permit

"G. L. c. 10, § 28, is a general prohibition on assignments with certain exceptions, including an exception in circumstances where the disposition of a lottery prize is an appropriate remedy in a judicial proceeding independent of section 28. . . . If the 'appropriate judicial order' exception were to freely permit voluntary assignments for any reason with leave of the court, the exception would entirely swallow the general rule that 'no right of any person to a prize shall be assignable.' . . . Such a construction is contrary to the principle that statutory exceptions should be construed narrowly . . . ." (Emphasis supplied; quotation omitted.)

In Midland, supra at 535-536, this court elaborated, "[i]n Singer Friedlander, . . . [a]fter a thorough analysis, the court concluded that, if the judiciary were able to approve voluntary assignments through declaratory judgment actions, particularly given the lack of guidance in the statute for deciding what circumstances would warrant such a judicial order, the exception would swallow the rule. . . . The court further noted that its decision comported with 'nearly every reported appellate and trial decision which has construed State lottery statutes

assignment of prizes for purposes of paying estate and inheritance taxes, or to a trust the beneficiaries of which are the prize winner, his mother, father, children, grandchildren, brothers, sisters, or spouse. Neither the commission nor the director shall be liable for the payment of a prize pursuant to this section. This section prevails over section 9-405 of chapter 106." (Emphasis supplied.)

containing similar language.' [Singer Friedlander, supra] at 566, citing cases." (Emphasis supplied.)

Seneca argues that this case is distinguishable from both Singer Friedlander, supra, and Midland, supra, because Seneca is not seeking to enforce the never-approved assignment, but rather simply to collect on an unpaid debt incurred when it provided Geulakos with a cash advance. We are not persuaded. In fact, this debt arose specifically out of an attempted assignment of a lottery prize and for that reason cannot reasonably be described as "independent from § 28." Moreover, even were this a simple debt collection action, nothing in § 28 necessarily implies that the commission waived its immunity to trustee process actions.

We also have in mind the commission's argument that subjecting it to trustee process actions by creditors of prize recipients puts an undue burden on the commission's and Commonwealth's resources, the type of harm that sovereign immunity is designed to forestall. See New Hampshire Guar. Assn. v. Markem Corp., 424 Mass. 344, 351 (1997) (purpose of sovereign immunity is not only to protect public treasury from money judgments, but also to protect "public administration from interference by the courts at the behest of litigants"). See also Herzig v. Horrigan, 34 Conn. App. 816, 821 (1994) (commenting on potential burden on State posed by numerous lottery winners who were or become judgment debtors).

There is, however, one recently-explained exception to the rule that trustee process actions are not permitted against the Commonwealth.  In Randall v. Haddad, 468 Mass. at 356-358, notwithstanding its reiteration of the general rule, the court nevertheless permitted the use of trustee process to recover funds embezzled by the defendant and deposited into a State retirement account.  Noting that "'sovereign immunity is a judicially created common law concept,' Morash & Sons v. Commonwealth, 363 Mass. 612, 615 (1973), and, as such, is subject to judicial abrogation or limitation," the court stated that, in that particular case, "the perfect storm of [the employee's] contumacious conduct and perversion of the Commonwealth's public employee retirement law led [the court] to conclude that the defense of sovereign immunity against serving as a trustee should be unavailable to the Commonwealth."

In this case, on the other hand, there are no such compelling facts.  Indeed, the public policy considerations argue for the opposite result.  Specifically, this action in fact arose from an attempt at an assignment of approximately $550,000 in lottery payments in return for a lump sum advance of $154,722.81 (and perhaps also the undisclosed $40,000 advance).  Seneca's tactics essentially constitute an "end run" around the required process by first failing to disclose the $40,000 advance in the ultimately-abandoned Norfolk County action

pursuant to G. L. c. 10, § 28, and dismissed in May, 2012, and then seeking to attach the lottery payouts by forcing the commission to make payments directly to it in what it now describes as an unrelated action.  If permitted, this would vitiate the careful protections drafted by the legislature to protect lottery winners from predatory practices.

At least in the circumstances of this case, we are satisfied that the trustee process attachment issued by the judge was not an "appropriate judicial order," and must be reversed.

Order dated December 24, 2013, allowing plaintiff's motion for trustee process reversed.