NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-17                                          Appeals Court

WALTER J. ENO  vs.  NANCY E. McGINN.

No. 23-P-17.

Plymouth.     July 12, 2023. - January 10, 2024.

Present:  Sacks, Grant, & Smyth, JJ.

Judgment, Satisfaction.  Practice, Civil, Judgment, Attachment,
    Trustee process.  Trustee Process.  Commonwealth, Officers
    and employees, Trustee process.  Governmental Immunity.
    Immunity from Suit.  Waiver.  Statute, Construction.

Civil action commenced in the Superior Court Department on
April 9, 2019.

A motion to amend an attachment of wages and renew a
trustee process order, filed on August 3, 2022, was heard by
William F. Sullivan, J.

Nancy E. McGinn, pro se.
Walter J. Eno, pro se, submitted a brief.
Amy L. Nable, Special Assistant Attorney General, for the
Comptroller of the Commonwealth, amicus curiae, submitted a
brief.

SMYTH, J.  In an effort to collect on an unpaid judgment,

the plaintiff, Walter J. Eno, representing himself, filed a

motion seeking an amended writ of attachment of the wages of the

defendant, Nancy E. McGinn, and to renew a trustee process order directed to her employer, the Commonwealth of Massachusetts. After hearings at which the parties and assistant attorneys general on behalf of the Comptroller of the Commonwealth (comptroller) appeared, a judge of the Superior Court denied the motion on the basis that G. L. c. 29, § 31, bars the attachment of a State employee's wages in these circumstances. The plaintiff now appeals from that order. We affirm.[1]

Background. In 1994, the plaintiff's son, Gregory Eno (Gregory), was severely injured when the defendant drove her motor vehicle over him three times.[2] In 1997, Gregory commenced a personal injury action against the defendant in the Superior Court. The defendant defaulted and a damages assessment hearing was held. The original default judgment in the amount of $1.35 million entered in November 1999. In January 2000, an execution issued in excess of $1.7 million.

Gregory passed away in 2015 having never received payment from McGinn. In 2018, the plaintiff moved to substitute himself for Gregory as plaintiff in the personal injury action, to renew

---

[1] We acknowledge the amicus memorandum and attachments thereto filed on behalf of the Comptroller of the Commonwealth (comptroller).

[2] The defendant was criminally charged in connection with this incident. She was convicted of leaving the scene of an accident involving personal injury and negligent operation of a motor vehicle.

the judgment and for a new writ of execution for an additional twenty years, and to attach the defendant's wages as she had made no payments toward the judgment. All three motions were allowed. A writ of attachment of the defendant's wages entered in March 2019, but it did not name the Commonwealth as the defendant's employer. An amended default judgment in the amount of $4,825,473 entered in April 2019,[3] and a writ of execution as to the amended judgment entered in May 2019.[4]

The March 2019 writ of attachment of wages in the amount of $135,000 was served on the comptroller in May 2019. In response, an assistant attorney general wrote to the plaintiff advising him that the comptroller would not honor the wage garnishment request for three reasons. First, the writ was procedurally improper because it did not name either the comptroller or a relevant State entity. Second, the plaintiff did not comply with Mass. R. Civ. P. 4.2, 365 Mass. 740 (1974), governing trustee process, which the assistant attorney general explained was "the legal mechanism by which a third-party [sic], such as an employer, can be brought into a case named as the 'trustee' of a defendant's wages and ordered to garnish those

---

[3] This amount reflects damages of $1.35 million plus interest from November 1997 to April 2019.

[4] As the Superior Court judge noted, the record is unclear why the May 2019 writ of execution is roughly one-tenth the amount of the amended judgment.

wages." Finally, even if the plaintiff had complied with the trustee process procedure, the assistant attorney general wrote that the comptroller was "legally prohibited" by G. L. c. 29, § 31, from honoring the wage garnishment.

Shortly thereafter, the defendant filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts. Through the bankruptcy proceedings, the defendant sought to discharge the judgment she owed to the plaintiff, which she reported to be $4,004,110. Following a trial, a bankruptcy judge held that one-third of the judgment debt was excepted from discharge and ordered that the remaining balance of the judgment debt be discharged.

After judgment entered in the bankruptcy action, the plaintiff filed a motion in the Superior Court seeking to amend the March 2019 writ of attachment of wages to reflect what he asserted was one-third of the outstanding judgment, $1,622,203.93 (inclusive of interest and costs)[5] and to "[r]enew the 2019 [s]ummons to [t]rustee, naming the Comptroller of the Commonwealth to garnish the wages of [the defendant], a [S]tate

---

[5] The judge noted that in light of the bankruptcy discharge, the revised amount of the Superior Court judgment should be $1,608,491.25. Given the disposition of this appeal, we need not resolve the discrepancy.

employee."[6]  Following two hearings on the motion in the fall of 2022, the judge entered an order dated October 7, 2022, denying the motion.  The judge explained in his written decision that "[w]hile the equities of this case weigh heavily in favor of [the plaintiff]'s argument," G. L. c. 29, § 31, precluded the plaintiff from using trustee process to garnish the defendant's wages.  This appeal followed.[7]

Discussion.  The plaintiff advances two interrelated arguments in this appeal.  He asserts that he is entitled to an amended writ of attachment that includes the revised amount of the judgment following the bankruptcy proceedings and that the comptroller is obligated to comply with that amended writ by attaching the defendant's wages.  The plaintiff further argues that he is not required to utilize the trustee process procedure to attach the defendant's wages.  For the reasons that follow, we conclude that although trustee process is the appropriate mechanism for a plaintiff to seek to attach a defendant's wages

---

[6] The parties do not dispute that the defendant is a State employee due to her employment by the Massachusetts Maritime Academy.  See G. L. c. 15A, § 5.

[7] As of the date of the appellate argument, the defendant had not paid any money toward the judgment.

directly from her employer, that avenue is foreclosed in the circumstances here by G. L. c. 29, § 31, sixth par.[8]

A prevailing plaintiff may seek to collect on a judgment in various ways, including through the procedures for attachment under G. L. c. 223, §§ 42 to 83A, and Mass. R. Civ. P. 4.1, 365 Mass. 737 (1974), and trustee process under G. L. c. 246 and Mass. R. Civ. P. 4.2, 365 Mass. 740 (1974).[9] These two procedures bear some similarities, but there are important distinctions. "Attachment concerns itself with chattels or realty not merely belonging to [the] defendant, but in his possession and control." J.W. Smith & H.B. Zobel, Rules Practice § 4.1.5 (2d ed. 2006) (hereinafter Smith & Zobel). See

---

[8] Following argument in this appeal, the plaintiff filed a letter (with two subsequent letters of corrections) wherein he argues that the March 2019 writ of attachment was properly served on the comptroller and was enforceable such that it required the comptroller to garnish the defendant's wages. To the extent the plaintiff argues that the assistant attorney general improperly rejected that writ, we disagree for the reasons described herein. Moreover, our review of the record finds no support for the plaintiff's accusations of misconduct attributed to the assistant attorney general who appeared on behalf of the comptroller before the Superior Court.

[9] While both attachment and trustee process procedures offer a mechanism to obtain prejudgment security, the procedures also are used postjudgment. See, e.g., Borne v. Haverhill Golf & Country Club, Inc., 58 Mass. App. Ct. 306, 326 (2003) (postjudgment attachment of real property or interest in personal property permissible while appeal pending). Notably, trustee process may be used to attach wages only after a judgment has entered. See G. L. c. 246, § 32, eighth par.; Mass. R. Civ. P. 4.2 (a).

G. L. c. 223, § 42 (permitting attachment of "[a]ll real and personal property" with certain exceptions); Mass. R. Civ. P. 4.1 (a) (permitting attachment of "real estate, goods and chattels and other property"). By contrast trustee process enables a plaintiff to attach goods or credits of the defendant that are in the hands of a third person. See Goodspeed's Book Shop, Inc. v. State St. Bank & Trust Co., 8 Mass. App. Ct. 147, 149 (1979). See also Smith & Zobel, supra ("plaintiff may regard the custodian as a kind of trustee for plaintiff's benefit, and may attach defendant's goods in the hands of the third party"); Gilleran, Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply, 69 Mass. L. Rev. 156, 157 (1984) ("Generally, the defendant's property is not subject to attachment where it is held by a third party [, but] . . . security may be obtained over tangible assets held by a third party in a trustee process action"). Ordinarily, credits attachable through trustee process include wages that are "due to the defendant absolutely and without any contingency." G. L. c. 246, § 24.[10] Trustee process then is an

---

[10] The amount of wages that may be recovered is limited by G. L. c. 235, § 34, Fifteenth, which provides that the following are exempt from seizure on execution: "[W]ages equal to the greater of [eighty-five percent] of the debtor's gross wages or [fifty] times the greater of the [F]ederal or the Massachusetts hourly minimum wage for each week or portion thereof . . . ."

appropriate mechanism for a plaintiff to seek to attach a defendant's wages directly from her employer.

The use of trustee process is subject to certain limitations, including the long-recognized principle "that trustee process actions against the Commonwealth are barred by sovereign immunity."[11]  Seneca One, LLC v. Geulakos, 88 Mass. App. Ct. 439, 442 (2015), and cited cases.  Consequently, the general rule is that "'the Commonwealth cannot be summoned as a trustee under trustee process without statutory authorization and, therefore, there can be no attachment by trustee process' absent such an authorization."  Randall v. Haddad, 468 Mass. 347, 354 (2014), quoting MacQuarrie v. Balch, 362 Mass. 151, 152 (1972).

The issue then is whether the Legislature has enacted any statute that expressly or by necessary implication waives sovereign immunity and authorizes the Commonwealth to be summoned as trustee in this action.  "The rules of construction

___

[11] "Sovereign immunity is an ancient doctrine [that] . . . protects the public treasury against money judgments and public administration from interference by the courts at the behest of litigants except in instances and by procedures the Legislature has authorized."  New Hampshire Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344, 351 (1997).  Cf. Dugan v. Rank, 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, . . . or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act" [quotations and citations omitted]).

governing statutory waivers of sovereign immunity are stringent." Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 (1981). See Harrison v. Massachusetts Bay Transp. Auth., 101 Mass. App. Ct. 659, 662 (2022), quoting Commonwealth v. Exxon Mobil Corp., 489 Mass. 724, 731 (2022) ("[W]aiver[s] of sovereign immunity must be expressed by the terms of the statute, or appear by necessary implication from them" [quotations omitted]).

General Laws c. 29, § 31, sixth par., provides,

"The comptroller or other [S]tate official authorized to expend money on behalf of the [C]ommonwealth may comply with administrative wage garnishments for child support, student loans, [S]tate or [F]ederal tax liens, court order bankruptcy orders or other garnishments as determined by the comptroller which name the [C]ommonwealth as employer and mandating deductions under [S]tate or [F]ederal law for employees of the [C]ommonwealth in amounts not more than the percentage allowable under [S]tate or [F]ederal law or a greater amount as authorized by the employee, provided that the [C]ommonwealth shall not use [S]tate resources or be compelled to comply with voluntary private garnishments or trustee process orders" (emphases added).

The assistant attorney general who appeared in Superior Court on behalf of the comptroller, informed the judge that G. L. c. 29, § 31, "expressly bars the Comptroller's Office from garnishing a state employee's wages for trustee process or private garnishment." In fact, as emphasized above, § 31 directs that the comptroller "may comply" with certain wage garnishments, but "shall not use [S]tate resources or be compelled to comply with . . . trustee process orders." At the

request of the panel after oral argument of this appeal, the comptroller informed the court that the comptroller had not complied with the trustee process order in this case, because "the debt at issue here does not clearly fall within the statute's delineated categories for which garnishment is permitted, and therefore the general rule of immunity from trustee process applies." The comptroller further stated that "the bankruptcy court decision in this case did not order garnishment of McGinn's wages; it only declared a portion of her debt to Eno non-dischargeable."

The Legislature's directive on the issue is clear and unequivocal: the Commonwealth shall not be compelled to comply with trustee process orders. See Massachusetts Broken Stone Co. v. Weston, 430 Mass. 637, 640 (2000) ("Where the language of a statute is clear, courts must give effect to its plain and ordinary meaning and the courts need not look beyond the words of the statute itself"). To the extent that the plaintiff relies on the statutory language that authorizes the comptroller to expend money to comply with "court order bankruptcy orders or other garnishments," the statute provides that the comptroller "may" comply with such orders, but it does not require the comptroller to do so. G. L. c. 29, § 31, sixth par. See Cepulonis v. Superintendent, Mass. Correctional Inst., Cedar Junction, 61 Mass. App. Ct. 699, 702 (2004) ("While the word

'shall' is one of command, the word 'may' is one of permission, and it does not impose an obligation but simply authorizes an act").

Moreover, § 31 pertains to bankruptcy and court orders that "name the [C]ommonwealth as employer and mandat[e] deductions under [S]tate or [F]ederal law for employees of the [C]ommonwealth." G. L. c. 29, § 31, sixth par. None of the orders and judgments in the appellate record, including those issued in the bankruptcy proceedings, meets those criteria. They do not name the Commonwealth as the defendant's employer, nor do they mandate the Commonwealth to garnish from the defendant's wages.[12],[13]

Although we do not rely on legislative history in reaching our conclusion because the statute is plain and unambiguous, we note that what little, unofficial history we have supports our reading of G. L. c. 29, § 31. See, e.g., AIDS Support Group of

---

[12] The bankruptcy order and judgment dealt only with the discharge of two-thirds of Superior Court judgment debt; they were not directed to the Commonwealth and did not mandate deductions from the defendant's wages.

[13] The March 2019 writ of attachment of the defendant's wages and the related finding and order for approval of attachment of wages do not name the Commonwealth as the defendant's employer. Therefore, the comptroller was not obligated to consider attaching the defendant's wages after being served with those documents. As discussed supra, even if the plaintiff had served the comptroller with a trustee process summons (as he asserts in his brief), the comptroller was permitted to contest the summons on sovereign immunity grounds.

Cape Cod, Inc. v. Barnstable, 477 Mass. 296, 301 (2017) ("Where

'the language of the statute is plain and unambiguous, . . .

legislative history is not ordinarily a proper source of

construction'" [citation omitted]).  Prior to 2012, the statute

authorized wage garnishments only for repayment of student loans

issued by the Federal government.  See St. 1998, c. 319, § 5.

As evidenced by an e-mail message from the general counsel for

the comptroller,[14] the relevant revisions to the statute,

including those pertaining to trustee process and "court order

bankruptcy orders or other garnishments," were proposed by the

general counsel for the comptroller to Senate staff in 2011.

Those changes ultimately were accepted by the Legislature in the

enacted version of the statute effective January 1, 2013.  See

G. L. c. 29, § 31, sixth par., as amended through St. 2012,

c. 165, § 112.  In reference to those statutory changes, the

general counsel explained as follows:

> "[C]hanges to this section clarify the type of mandated
> wage garnishments that [the comptroller] currently supports
> through the payroll system.  Only court ordered
> garnishments should be deducted using [S]tate resources.
> Private garnishments for credit card payments, mortgages,
> car loans or other non-[S]tate or [F]ederal government
> related debts should not be deducted using [S]tate
> resources.  Employees can set up voluntary direct deposit
> payments for these payments."  (Emphasis added.)

---

[14] The comptroller included this e-mail message, dated March 17, 2011, in their amicus brief addendum in support of their position that G. L. c. 29, § 31, did not contain a waiver of sovereign immunity.

This explanation clarifies that the amendment was meant to reflect the types of payments the comptroller was deducting through the payroll system at that time.  Indeed, a written policy by the comptroller predating the statutory amendment reflects that the Commonwealth processed garnishments in circumstances beyond those related to the repayment of Federal student loans.  See Office of the Comptroller, Mandatory and Voluntary Deductions:  Wage Garnishments (rev. Nov. 1, 2006), https://www.mass.gov/doc/poprwagegarnishpdf/download [https://perma.cc/VAN3-PFN6] (hereinafter Mandatory and Voluntary Deductions).  Relevant here is that for "[c]ourt [o]rdered [e]mployer [w]age [g]arnishments,"[15] the policy provided that the comptroller would follow the same procedure undertaken in this action, namely that the summons for trustee process "be submitted immediately to the Attorney General's office for review to determine if there is a legal obligation for the Commonwealth to honor the wage garnishment."  Id. at 2.

---

[15] The policy also discusses garnishments for orders entered under Chapter 13 of the Bankruptcy Code, tax levies from the Federal Internal Revenue Service, orders from the State Department of Revenue, child support and spousal support orders, overpayments from the Department of Transitional Assistance, and reimbursements for certain services provided by the Division of Medical Assistance.  See Mandatory and Voluntary Deductions, at 1-2.  As noted above, the bankruptcy proceedings here were under Chapter 7 of the Bankruptcy Code, not Chapter 13.

Nothing in the policy may be read to mandate the comptroller to attach a State employee's wages through trustee process.

In sum, we conclude that based on the doctrine of sovereign immunity and the plain language of G. L. c. 29, § 31, sixth par., the Commonwealth as the defendant's employer cannot be compelled to comply with trustee process in this action.[16], [17]

Conclusion.  The judge's October 7, 2022 order denying the plaintiff's motion to amend the March 2019 writ of attachment of wages and renew the 2019 summons to the trustee to attach the defendant's wages is affirmed.

So ordered.

---

[16] We take no position on whether the plaintiff would be permitted to collect on the judgment, including by using the trustee process procedure to attach the defendant's wages after they are deposited in a bank account, or by filing an application for supplementary process under G. L. c. 224, § 14. See Birchall, petitioner, 454 Mass. 837, 844 (2009).

[17] The plaintiff's arguments regarding holding the defendant in contempt of court are waived because the record before us does not reflect that the plaintiff initiated contempt proceedings before the Superior Court.  See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 86 (2014) (argument raised for first time on appeal waived).